LEASE MANAGEMENT CORPORATION *et al.*, Plaintiffs-Appellants, v. G.I.C. FINANCIAL SERVICES, Defendant-Appellee.

First District (2nd Division)   No. 1—88—2611

Opinion filed August 14, 1990.

Ronald Butler, Robert N. Hermes, and Ellen M. Babbitt, all of Butler, Rubin, Newcomer, Saltarelli & Boyd, of Chicago, for appellants.

Stephen J. Senderowitz, Susan Bogart, and Sidney J. Lee, all of Becker & Tenenbaum, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiffs, two affiliated companies, Lease Management Corporation and Lease Management Equipment Corporation (hereinafter jointly LMC), filed this suit against defendant, G.I.C. Financial Services Corporation (hereinafter GIC), alleging that GIC breached its

contract with LMC and breached its duty of good faith and fair dealing. The trial court entered summary judgment in defendant's favor.

On appeal, LMC contends that: (1) the trial court's ruling was based upon a fundamental misconception of the contract and resulted in an erroneous grant of summary judgment; and (2) there were unresolved genuine issues of fact about whether GIC breached its duty of good faith and fair dealing.

Both parties to this litigation are engaged in an aspect of financial services to industry. A brief background into the nature of their respective roles in commercial transactions will place the dispute before this court in better focus.

LMC provides specialized professional financial services to the heavy equipment industries. LMC initially identifies all parties interested in a lease and packages the transaction. It will also administer the transaction before, during and after the original lease, and will aid the original purchaser/lessor in negotiating a favorable substitute lease upon the termination of the original lease (remarketing).

Defendant GIC purchased and then leased heavy equipment to various companies throughout the country. GIC would either negotiate the leases directly with the lessees or would enter into deals brought to it by independent brokers such as LMC. The independent brokers were paid a broker's fee when the transaction closed. Occasionally, GIC would also enter into a separate remarketing contract with the independent broker. Under these remarketing contracts, the broker would receive a fee, under certain circumstances, if the equipment subject to the original lease was remarketed.

The case at hand originated in 1981, when LMC presented GIC with a deal involving the leasing of 11 large ore-hauling trucks to Chino Mines Co. for use in its mining operations outside of Harley, New Mexico. GIC, through its wholly owned subsidiary G.I.C. Leasing Services, accepted the deal and purchased the trucks. In late March 1981, GIC leased the trucks to Chino Mines Co. for a term of eight years ending on July 1, 1989 (Chino lease). LMC was paid a broker's commission in excess of $250,000 for arranging the lease. Since these transactions are generally highly leveraged, GIC uses the rent proceeds to repay the loan it obtained to purchase the trucks, meet its operating expenses, and make a profit. The original lease of the trucks to Chino is not in dispute because LMC was paid for its services by GIC.

At the end of the eight-year term, GIC will still own the trucks but will not have a lessee. Therefore, it is interested in getting another lessee when the lease expires. This keeps cash flowing to GIC

and avoids the cost of storage, insurance and other expenses incident to trucks it owns but does not lease.

The remarketing agreement at issue was designed to provide uninterrupted cash flow to GIC and an opportunity for LMC to earn an additional fee for its remarketing services. On April 1, 1981, GIC and LMC entered into the "Remarketing Compensation Agreement" dealing with the trucks leased to Chino. The agreement was jointly drafted by the parties and was reviewed and revised by outside counsel jointly representing both LMC and GIC. The agreement sets forth specific circumstances in which LMC can collect a fee.

On April 29, 1986 (approximately three years prior to the expiration of the Chino lease), GIC notified LMC, by letter, of its intention to assign the Chino lease and sell the underlying trucks. This type of transaction is known as a "mid-term sale/assignment" because it is the sale of the underlying equipment and an assignment of the accompanying lease during the term of the lease and has no effect upon the terms or the expiration date of the lease. GIC invited LMC "to participate in this remarketing activity."

LMC tendered two purchase bids. GIC rejected them because they were lower than the bids received from other parties. GIC also informed LMC that GIC believed that the mid-term transaction would relieve GIC of any further obligations under the agreement and would effectively terminate the agreement. LMC took exception to this interpretation and demanded that GIC either assign the agreement as part of the mid-term transaction, or commit itself to continuing its responsibility under the agreement. GIC refused to do so.

On October 13, 1986, GIC, through its wholly owned subsidiary, sold the trucks and assigned the Chino lease to Heller Financial, Inc. (Heller). LMC did not render any assistance in connection with this sale and assignment. There was no assignment of the remarketing agreement to Heller.

This suit was filed in late 1986. LMC's first amended complaint sought a declaratory judgment setting forth the rights and obligations of the parties to the agreement and declaring that GIC continues to be bound by the remarketing agreement. It alleges that GIC breached the agreement by either failing to honor its "continuing commitment" to pay remarketing fees or by failing to assign and transfer the agreement to Heller. The complaint also alleged that GIC breached its duty of good faith and fair dealing.

GIC moved for summary judgment on the grounds that: (1) under the express terms of the agreement, GIC had no obligation to assign the agreement to Heller; (2) under the terms of the agreement, GIC

had no obligation to pay LMC a remarketing fee for the mid-term transaction; and (3) GIC acted in accordance with the terms of the agreement and acted in good faith and with respect for LMC's rights. LMC replied that: (1) GIC's obligations survived the mid-term transaction; (2) GIC's conduct constituted anticipatory breach of the agreement; and (3) GIC breached its duty of good faith and fair dealing. The trial court granted summary judgment, holding that the agreement was an unambiguous integrated contract. The court found that the parties chose not to include mid-term transactions in the agreement. LMC appeals.

I

First, LMC contends that the trial court had a fundamental misconception of the disputed agreement which led to the erroneous grant of summary judgment in favor of GIC. The agreement is designated "Remarketing Compensation Agreement." The trial court found that the agreement listed "all of the possible eventualities" which would require the payment of a commission by GIC to LMC. Significantly, a "mid-term sale/assignment" is not one of the transactions which would be compensable to LMC under the facts of this case.

■■■ A contract is ambiguous where the contract, as written, is susceptible to more than one meaning. (*Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 1016, 452 N.E.2d 667, *aff'd* (1984), 103 Ill. 2d 290.) A contract is not ambiguous merely because the parties disagree about its meaning. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d 585, 593, 527 N.E.2d 897, *appeal denied* (1988), 123 Ill. 2d 566.) In the case *sub judice*, the trial court correctly determined that the agreement was clear and unambiguous. It correctly recognized that LMC wanted the court to create a contractual provision which the parties themselves did not include in the agreement. LMC did not cite any legal authority requiring the trial court to add the missing provision for the benefit of LMC.

Under the terms of the agreement, LMC was "engaged on a non-exclusive basis by GIC for the purpose of remarketing the Equipment." GIC agreed to "give LMC written notice" when any of the equipment became "available for purchase" prior to the expiration of the initial eight-year term of the Chino lease. GIC agreed that it would not sell the equipment until the expiration of 30 days after giving LMC written notice. The sale must be in an "arms' length transaction." The engagement of LMC "shall not be deemed to prohibit GIC *** from engaging in the remarketing effort to further as-

sure the obtaining of the most favorable offers for the Equipment."

Conspicuously missing is any provision requiring the assignment of the remarketing agreement to the third-party purchaser at a "mid-term sale/assignment" of the equipment. It is undisputed that GIC gave proper notice of the proposed sale to Heller. It is also undisputed that LMC made two separate bids to purchase the equipment and that both bids were lower than the price offered by Heller. It is also undisputed that the sale to Heller was an "arms' length transaction." GIC merely exercised its right to obtain the "most favorable" price for its equipment.

Although the original eight-year Chino lease had a few years to go before its expiration, the equipment has a new owner and Chino has a new lessor. LMC had the opportunity to be the new owner and lessor, but it could not meet the price. The trial court correctly found that LMC wanted the court to write a provision into the remarketing agreement which the parties themselves did not do. The trial court properly refused to do so. See *Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 471 N.E.2d 632.

■ We therefore conclude that the trial court correctly found that the agreement was not ambiguous and that GIC was entitled to summary judgment under the terms of the agreement and the facts of this case. Summary judgment is an appropriate remedy for resolving disputes arising out of unambiguous contracts. *Metalex Corp. v. Uniden Corp. of America* (7th Cir. 1988), 863 F.2d 1331, 1333.

II

LMC contends that there is a genuine issue of material fact as to whether GIC breached its implied duty of good faith and fair dealing and, for that reason, the trial court erroneously entered summary judgment in favor of GIC. We disagree.

■ When GIC contemplated the sale of the trucks and assignment of the Chino lease to Heller, GIC notified LMC and extended an opportunity to LMC to meet or exceed other offers. LMC did, in fact, submit two bids which were lower than Heller's. GIC demonstrated good faith and fair dealing by withholding the sale to Heller until LMC submitted its bids.

LMC also contends that the sale to Heller without conditioning the sale on Heller's assumption of the remarketing agreement between LMC and GIC constitutes bad faith. What LMC overlooks is the fact that the remarketing agreement did not obligate Heller to assume the contract nor GIC to continue to be responsible to LMC after the sale of the trucks.

We therefore conclude that the grant of summary judgment in favor of GIC was correct.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.