THE PEOPLE *ex rel.* ROLAND W. BURRIS, as Comptroller of the State of Illinois, Plaintiff, v. MEMORIAL CONSULTANTS, INC., Defendant (Memorial Consultants, Inc., Petitioner-Appellant, v. Roland W. Burris, as Comptroller of the State of Illinois, Respondent-Appellee).

Third District   No. 3—91—0308

Opinion filed January 30, 1992.

654

Karen L. Kendall and Matthew S. Hefflefinger, both of Heyl, Royster, Voelker & Allen, of Peoria (Richard N. Molchan, of counsel), for appellant.

James R. Sneider, of Chicago, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Memorial Consultants, Inc. (MCI), appeals from the trial court's entry of summary judgment in favor of Roland W. Burris (the Comptroller) on MCI's petition to enforce a settlement agreement and complaint for *mandamus*. We affirm.

MCI manages and operates 11 cemeteries in the State of Illinois and sells burial vaults to consumers on a "pre-need" basis. On June 2, 1971, the Auditor of Public Accounts of the State of Illinois (predecessor to the Comptroller; see Ill. Rev. Stat. 1989, ch. 15, par. 222) filed suit against MCI seeking to force MCI to comply with the Illinois funeral or burial funds act (the Act) (Ill. Rev. Stat. 1971, ch. 111½, par. 73.101 *et seq.*). The trial court ruled in favor of MCI, but the judgment was reversed by this court and remanded for further proceedings. (*People ex rel. Lindberg v. Memorial Consultants, Inc.* (1977), 50 Ill. App. 3d 1005, 366 N.E.2d 127.) The trial court subsequently ordered MCI to make an accounting of its contracts entered into for the sale of vaults to determine the amount of money which should be deposited into trust in accordance with the Act. The Comptroller eventually determined that MCI was required to deposit the sum of $2,463,039 into trust. This amount represented 95% of the selling price of the burial vault contracts entered into between MCI and its customers. This level of funding was required under the Act.

As a result of subsequent negotiations between MCI and the Comptroller, a judgment order and stipulation were entered on De-

cember 27, 1979. The stipulation outlined the method by which MCI was to meet its funding obligations under the Act. The stipulation distinguished "A" contracts (those paid in full) from "B" contracts (those on which payments were still due), and also provided that a trust agreement would be entered into between MCI and a trustee, subject to the Comptroller's approval. Paragraph 15 of the stipulation stated:

"Comptroller agrees to amend the funding requirements if the Funeral and Burial Funds Act is amended at a future date to require a lesser funding requirement on these 'A' and 'B' contracts, if applicable."

In addition, Article XII of the trust agreement stated:

"This Agreement may not be amended, modified or altered in any way without first securing the written consent of the Comptroller. Comptroller agrees to amend as provided in Paragraph 15 of Stipulation attached as Exhibit A and to return any excess funding to MCI and Cemeteries."

Effective September 1, 1989, the Act was amended to require 85% of the purchase price of burial vaults to be placed in trust rather than the 95% required under the prior law. MCI then requested an amendment to the trust agreement to reflect the change in the Act and sought the return of $208,364.98 in excess funding. The Comptroller refused to amend the trust agreement, and MCI filed its petition to enforce settlement agreement and complaint for *mandamus*. The parties filed cross-motions for summary judgment, and after a hearing the trial court denied MCI's motion, granted the Comptroller's motion, and entered judgment in favor of the Comptroller. The court found that both the stipulation and the trust agreement were unambiguous. The court further found that paragraph 15 of the stipulation required the Comptroller to amend the funding requirements on contracts entered into before September 1, 1989, only if the amendment to the funeral or burial funds act was effective retroactively. The court also ruled that the September 1, 1989, amendment was not to be applied retroactively. This appeal followed.

The essence of this dispute is the parties' differing interpretations of paragraph 15 of the stipulation. According to MCI, paragraph 15 was inserted at its insistence to address the possible reduction in the funding requirements of burial vaults. MCI maintains that it was aware of ongoing negotiations between the cemetery and funeral industries and the Comptroller, and MCI anticipated changes in funding requirements under the Act, including reduced

funding for vaults. MCI argues that the "if applicable" language of paragraph 15 was designed to make clear that any amendments to the Act which changed the funding requirements of burial vaults, rather than *other* funeral merchandise or services, would change the funding requirements of the trust agreement.

The Comptroller contends that the "if applicable" language was inserted into paragraph 15 at the Comptroller's insistence to make it clear that the trust agreement would not be amended unless any future amendment to the Act was applicable to funds already on deposit. That is, if a future amendment was not retroactive, then it was not applicable to the existing contracts and no amendment to the trust agreement would be required. Regarding Article XII of the trust agreement, the Comptroller maintains that the reference to the "return [of] any excess funding" is consistent with the trial court's interpretation of paragraph 15 because any *retroactive* amendment to the Act would result in "excess funding" by MCI. However, if any amendment had only a prospective effect, then there would be no excess funding to return to MCI.

On appeal from a grant of summary judgment, a reviewing court's function is to determine whether the trial court properly concluded that there was no genuine issue of material fact, and if there was not, whether the judgment was correct as a matter of law. (*Scottish & York International Insurance Group/Guarantee Insurance Co. v. Comet Casualty Co.* (1990), 207 Ill. App. 3d 881, 566 N.E.2d 477.) Construing the language employed in a contract is a matter of law appropriate for summary judgment (*Scottish & York*, 207 Ill. App. 3d 881, 566 N.E.2d 477; *In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 510 N.E.2d 1057), unless the contract is ambiguous (*Lease Management Corp. v. G.I.C. Financial Services* (1990), 202 Ill. App. 3d 188, 559 N.E.2d 880; *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 484 N.E.2d 1178). Whether an ambiguity exists in a document is a question of law. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 523 N.E.2d 30; *In re Estate of Bresler*, 159 Ill. App. 3d 535, 510 N.E.2d 1057.) A contract is ambiguous if it is reasonably susceptible to more than one meaning (*W.H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 475 N.E.2d 273), but an ambiguity is not created merely because the parties disagree (*Hanover Insurance Co. v. Showalter* (1990), 204 Ill. App. 3d 263, 561 N.E.2d 1230; *Srivastava*, 168 Ill. App. 3d 726, 523 N.E.2d 30). Where no ambiguity exists, the intent of the parties at the time the contract was entered into must be determined from the language

used in the contract itself, not from the construction placed upon it by the parties. *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 469 N.E.2d 178.

In the instant case we find that the language used in paragraph 15 of the stipulation is not ambiguous, and we agree with the trial court that paragraph 15 requires the Comptroller to amend the funding requirements on the existing contracts only if an amendment to the Act applies retroactively. Paragraph 15 states that the funding requirements will be changed if the Act is amended "to require a lesser funding requirement on *these 'A' and 'B' contracts, if applicable.*" (Emphasis added.) In other words, if an amendment to the Act is applicable to these (*i.e.*, existing) contracts, then the funding requirement would be lowered. There is no dispute in this case that the amendment to the Act is not applicable to existing contracts and therefore the Comptroller is not required to lower the funding requirements and refund the "excess funding."

We find MCI's argument that it understood the phrase "if applicable" to simply distinguish amendments to the Act which apply to burial vaults from amendments which apply to other funeral merchandise or services unpersuasive. The subject of the "A" and "B" contracts referred to in paragraph 15 is burial vaults, not other funeral merchandise or services. Indeed, the subject matter throughout the entire course of this litigation, spanning more than 20 years, has been burial vaults. We will not ignore the ordinary and natural meaning of the language contained in paragraph 15 and create an ambiguity where none exists. The judgment of the circuit court is affirmed in all respects.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.