FIRST DIVISION
Filed: 5-29-07

No. 1-05-2329

| | | |
|---|---|---|
| PAUL B. EPISCOPE, Ltd., an Illinois Professional Corporation; PAUL B. EPISCOPE, Individually; and JOHN C. ERB, Individually, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 97 CH 12492 |
| LAW OFFICES OF CAMPBELL AND DI VINCENZO, a Partnership; RICHARD P. CAMPBELL, Individually; and ANTHONY S. DI VINCENZO, Individually, | ) ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Mary Anne Mason, Judge Presiding. |

## MODIFIED OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The plaintiffs, attorneys Paul Episcope and John Erb and the Episcope law firm, sued defendant attorneys to recover fees under a fee-splitting agreement. Plaintiffs allege in their complaint that their representation agreement (agreement) with defendants, Anthony Di Vincenzo and Richard Campbell and their law partnership, and the parties' mutual client, Havoco of America, Ltd. (client), applies to more than one case. The lawyers agreed in writing to represent the client jointly and split fees orally in the client's federal lawsuit for fraud and conspiracy against Elmer Hill, Hill's company, Hilco, Inc. (Hilco), and Sumitomo Shoji American, Inc. (Sumitomo), and for breach of contract against Sumitomo. The damages claimed were the loss of a multimillion dollar contract. The parties had substituted for the original attorneys who had filed the action but the defendants actually handled the case.

After a judgment of $15 million against Hill was upheld on appeal, defendants filed a separate lawsuit on behalf of the same client against the original attorneys for legal malpractice.

Plaintiffs were not a party to the new representation agreement with the client as to the legal malpractice suit, which was settled for $8 million prior to trial. Plaintiffs claim that the original representation contract to represent the client (and split fees) extends to the legal malpractice action.

In defendants' first motion for summary judgment, defendants argued that the legal malpractice case was separate from the parties' fee agreement in the first case. That motion was denied. In a second motion for summary judgment, defendants contended that any representation agreement concerning the legal malpractice case is void and unenforceable under the fee-sharing requirements in Rules 1.5(f)(2) and (3) of the Illinois Code of Professional Conduct. 134 Ill. 2d Rs.1.5(f)(2), (f)(3). The trial court granted this motion. Plaintiffs appeal from the court's granting of summary judgment. For the reasons set forth below, we affirm.

BACKGROUND

In June 1988, Barry Vandermeulen, the chairman of the board of Havoco, had concerns about his company's lawsuit for fraud, conspiracy and breach of contract and contacted his friend, plaintiff Episcope, for consultation. His original attorneys, Freeman, Alkins and Coleman (Freeman Firm), had filed the federal action in 1981 and had withdrawn from the case. Vandermeulen wanted plaintiffs Episcope and Erb to take the case over. Instead, Episcope recommended defendants Campbell and DiVincenzo, who took over the case, and plaintiffs Episcope and Erb also filed their appearance at the direction of the client, but the legal work was performed only by Campbell and DiVincenzo.

The parties and the client, by Vandermeulen, signed a joint representation agreement on July 5, 1988. The document was titled "Representation Agreement." In the agreement it states: "Paul B. Episcope, Ltd., and Campbell & Di Vincenzo agree to represent Havoco," and Havoco "agrees to retain" these same lawyers, "this being the complete agreement among them."

The representation agreement states nothing about how legal fees or the responsibilities

2

for the performance of the legal services were divided between the lawyers. It provides that, "In the event a monetary recovery is obtained by way of judgment, settlement or otherwise, Paul B. Episcope, Ltd., and Campbell & Di Vincenzo shall receive 33-1/3% of the Net Recovery as a contingent fee. Net recovery is the total recovery, including any award of attorney's fees or expenses, less all expenses and disbursements that you [Havoco] have paid."

The caption of the agreement (at the left margin directly underneath the title) lists the "Client" and, under that, the "Matter." The "Client" is "Havoco of America, Ltd., a Delaware Corporation." The "Matter" is Havoco's federal case against Hill and Hilco: "Havoco of America, Ltd. a Delaware corporation v. Elmer C. Hill, Hilco, Inc., a Tennessee Corporation," and Sumitomo. After this follows the case number of the pending federal action, "Civil Action No. 81 C 419."

Defendants tried the case with a jury. In early 1989, before trial, the federal district court judge dismissed all of Havoco's tort claims against Sumitomo as barred by the statute of limitations and only the contract claim remained. The Freeman Firm had added Sumitomo as a party defendant in November 1981, which was barred by the statute of limitations. At trial, Hilco was granted a directed verdict in its favor, and the jury found in favor of Sumitomo on the contract claim. The jury did render a verdict for $15 million on the remaining tort claim against Hill personally.

Hill filed for bankruptcy prior to the 7th Circuit affirming the judgment. The client was only able to collect $219,000 on the judgment. Defendants received a third of that amount for fees and paid Episcope a third of what they received under an oral understanding concerning their fee-splitting agreement.

Vandermeulen desired to file a legal malpractice action against the Freeman Firm for its failure to add Sumitomo as a party defendant within the statute of limitations. Initially he asked the parties to do so, but both defendants and plaintiffs declined. Plaintiffs claim they urged

3

defendants to take the case and delivered them research on the issues. Plaintiffs were unable to show anything more that would indicate that they were representing the interests of the client.

However, defendants did later accept the legal malpractice case. Plaintiffs claim they were "unaware" of the representation agreement in the legal malpractice case signed on February 2, 1993, and the fact that they were not included. Additionally, plaintiffs were unaware of a settlement proposal on September 8, 1993, and of the legal malpractice suit that was filed on November 10, 1993. On June 4, 1997, Erb telephoned DiVincenzo to obtain an "update" and was told that the case was settled for $8 million in 1996. DiVincenzo refused to discuss fee sharing.

Plaintiffs then brought this action, alleging breach of a fiduciary duty and seeking a third of the fees received from the settlement. Their claim relies on the initial representation agreement. They claim it reflects the parties' joint undertaking of representation and fee sharing, consistent with an oral agreement. They claim that the legal malpractice case is part of the same representation as that contained in the original representation agreement, only directed against a different defendant and as a result the defendants have a duty to share the fees.

Defendants in their motion for summary judgment argue the representation agreement of February 2, 1993, must be construed as a separate action. They further claim contracts, especially integrated contracts, are confined to their specific terms and point out that the initial agreement was specifically limited to the parties' representation of the client in Havoco v. Elmer Hill, Hilco, Inc., and Sumitomo, 81 C 419.

The plaintiffs advocate an expansive construction. They claim that the legal malpractice litigation was part of the "legal dispute as a whole." As Episcope characterized it, the suit was just another way to collect the judgment in the underlying case. Plaintiffs argue the parties' oral understanding reflected this broader interpretation. The trial court denied the first motion for summary judgment without written comment.

Defendants then brought their second motion for summary judgment relying on Rule

4

1.5(f) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.5(f)). In that motion they attacked the very validity of the written agreement of July 5, 1988. Rule 1.5(f) requires a lawyer dividing a fee with another lawyer from a different firm to have the client's signed, written consent to the other lawyer's employment. Defendants emphasized that under Rule 1.5(f)(2) the writing must disclose the basis for the division of fees, including the economic benefit to the other lawyer as a result of the division. Defendants also cited Rule 1.5(f)(3) that the writing must disclose the responsibility to be assumed by the attorney for the performance of the legal services.

Plaintiffs responded that the signed writing is sufficient to prove their case, even under Rule 1.5(f), if supplemented with the oral agreement providing them with a third of the fees. They argue, alternatively, that the representation agreement could be read (excising the oral agreement) with implied joint ventures principles of equal profits, providing them a 50/50 split of fees. Thirdly, they advanced the claim there was a breach of duty in defendants' failure to include the prior oral understanding in the written agreement. Plaintiffs' counsel argues that the oral provision for the fees "should have been included by Mr. Di Vincenzo in the written agreement." Those arguments are contained in an affidavit in response to the second motion for summary judgment. In that affidavit plaintiffs aver that plaintiffs "inadvertently overlooked the fact that a specific division of fees between the lawyers was not contained in the assessment."

The judge agreed with defendants. The court ruled that the representation agreement failed to comply with Rule 1.5(f). The judge found it disclosed nothing about the basis for the division of fees nor of the responsibility for legal services. The court stated: "The Agreement is clearly silent on the matters which subsections (2) and (3) of Rule 1.5(f) require to be in writing." The court declared the agreement void and unenforceable, granting summary judgment for defendants.

Plaintiffs appeal. We affirm.

ANALYSIS

"Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002). We review the granting of a motion for summary judgment de novo. General Casualty, 199 Ill. 2d at 284.

"The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party." Larry Karchmar, Ltd. v. Nevoral, 302 Ill. App. 3d 951, 956 (1999).

"On appeal from a grant of summary judgment, a reviewing court's function is to determine whether the trial court properly concluded that there was no genuine issue of material fact, and if there was not, whether the judgment was correct as a matter of law." People ex rel. Burris v. Memorial Consultants, Inc., 224 Ill. App. 3d 653, 656 (1992). In other words, where no genuine issue of material fact exists, the reviewing court's sole function is to determine whether judgment for defendant was correct as a matter of law. Cates v. Cates, 156 Ill. 2d 76, 78 (1993).

"Construing the language employed in a contract is a matter of law appropriate for summary judgment [citations], unless the contract is ambiguous." Memorial Consultants, 224 Ill. App. 3d at 656. "Whether an ambiguity exists in a document is a question of law." Memorial Consultants, 224 Ill. App. 3d at 656. "A contract is ambiguous if it is reasonably susceptible to more than one meaning [citation], but an ambiguity is not created merely because the parties disagree." Memorial Consultants, 224 Ill. App. 3d at 656.

Plaintiffs claim that the defendants breached their fiduciary obligations of honesty, good faith and fair dealings arising out of a joint venture agreement with plaintiffs. The joint venture agreement that plaintiffs refer to is the written retainer agreement of July 5, 1988, signed by the parties and the client, and the subsequent oral agreement as to the splitting of the fees on the

6

federal case referred to in that agreement. That agreement referred only to client Havocos' federal case number 81 C 419 against Elmer Hill, Hilco, Inc., and Sumitomo. This agreement does not mention a legal malpractice case against the Freeman Firm. It is plaintiffs' theory that a trier of fact could find from Erb's affidavit that an oral agreement to split fees between the parties existed prior to the written agreement of July 8, 1988, and that the defendants breached their fiduciary obligations of honesty, good faith, and fair dealings arising out of a joint venture in their failure to place that information in the agreement. It is this court's position that even if the splitting fee provision was included in the July 5 agreement, it would not extend to the legal malpractice case because the agreement is not ambiguous and was limited to the federal lawsuit that was specified in the document.

Plaintiffs further claim that the legal malpractice case was part of the agreement of July 5th, because the agreement states:

> "In the event a monetary recovery is obtained by way of judgment, settlement, or <u>otherwise</u>, the parties shall receive 33⅓% of the net recovery as a contingent fee."

Plaintiffs' theory is that "otherwise" widens the meaning of the recovery agreed upon to include a plaintiff's recovery from a lawyer who was negligent in pursuing recovery. Plaintiffs' second argument is also not persuasive.

The word "otherwise" does not have the expansive meaning claimed by plaintiffs. "Other" and "otherwise" are limited to the objects and persons that plaintiffs enumerated, according to <u>ejusdem</u> <u>generis</u> principles which means "other such like things." <u>E & E Hauling, Inc. v. Ryan</u>, 306 Ill. App. 3d 131, 137 (1999). For the purposes of the <u>ejusdem</u> <u>generis</u> rule, "other" and "otherwise" are treated identically. <u>E & E Hauling, Inc. v. Ryan</u>, 306 Ill. App. 3d at 137.

In <u>Farley v. Marion Power Shovel Co.</u>, 60 Ill. 2d 432, 436 (1975), quoting <u>People v. Capuzi</u>, 20 Ill. 2d 486, 493-94 (1960), our Illinois Supreme Court stated:

" 'The doctrine of ejusdem generis is that where a statute or
document specifically enumerates several classes of persons or
things and immediately following, and classed with such
enumeration, the clause embraces "other" persons or things, the
word "other" will generally be read as "other such like," so that the
persons or things therein comprised may be read as ejusdem generis
"with," and not of a quality superior to or different from, those
specifically enumerated.' "

Thus, we must interpret "otherwise" in the initial agreement to mean that monetary
recovery can occur by judgment, settlement, and by such other similar means as arbitration,
mediation, or other alternative dispute resolutions. Since "otherwise" is not interpreted to extend
to things of a different quality, it cannot apply to a different recovery when a written agreement
limits itself to a single action, as it normally will not be expanded beyond its terms.

" '[A]n agreement, when reduced to writing, must be presumed to speak the intention of
the parties who signed it.' " Air Safety, Inc. v. Teachers Realty Corp., 185 Ill. 2d 457, 462
(1999), quoting Western Illinois Oil Co. v. Thompson, 26 Ill. 2d 287, 291 (1962). " 'It speaks for
itself, and the intention with which it was executed must be determined from the language used.' "
Air Safety, 185 Ill. 2d at 462, quoting Thompson, 26 Ill. 2d at 291. " 'It is not changed by
extrinsic evidence.' " Air Safety, 185 Ill. 2d at 462, quoting Thompson, 26 Ill. 2d at 291. If no
ambiguity exists in the writing, the parties' intent must be derived by the trial court from the
writing itself, as a matter of law. Quake Construction, Inc. v. American Airlines, Inc., 141 Ill. 2d
281, 288 (1990). Any ambiguity claimed has to be asserted reasonably and plausibly. The
interpretation of the party contending for ambiguity needs to be equally plausible to the
construction of the party arguing the contract is unambiguous. Krantz v. Chessick, 282 Ill. App.
3d 322, 329 (1996). There is no plausible ambiguity in the representative agreement when it

8

applies to a specific case filed in the federal court.

Where a document is a fully integrated writing, the extrinsic or parole evidence rule is not available to vary or contradict the writing. Eichengreen v. Rollins, Inc., 325 Ill. App. 3d 517, 521 (2001). The meaning of the integrated document (as it expresses the intentions of the parties exclusively and is facially unambiguous) has to be confined to the "four corners" of the document. Eichengreen, 325 Ill. App. 3d at 517. The agreement as an integrated writing here does not include the legal malpractice suit.

However, even if this court found that there was a question of fact for the trier of fact to determine as to whether there was a valid joint venture agreement among the parties concerning the legal malpractice case, the agreement would still be void and unenforceable as a matter of law under Rule 1.5(f) of the Illinois Rules of Professional Conduct, which is the primary basis of defendants' motion for summary judgment and the subject of this appeal. At the time of the execution of the agreement of July 5, 1988, the relevant provision was Disciplinary Rule 2-107(a)(1), which is, for all practical purposes, identical to Rule 1.5(f), which states:

"(f) * * * [A] lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for performance of the legal services in question." 134 Ill. 2d R.1.5(f).

Defendants argue that the agreement claimed by plaintiffs violates Rule 1.5(f) in that it

9

fails to set forth the basis for a division of fees between the two firms and the responsibilities to be assumed by the parties as to the performance of legal services. This court agrees.

Any agreement claimed by plaintiffs is silent on the matters that subsections (2) and (3) of Rule 1.5(f) require to be in writing.

In In re Storment, 203 Ill. 2d 378 (2002), our Illinois Supreme Court recognized the importance of the writing requirements imposed by Rule 1.5(f) when it stated:

> "The writing must not only authorize a division of fees, but also
> must set out the bases for the division, including the respective
> responsibility to be assumed and economic benefit to be received by
> the other lawyer. The requirement of a writing ensures that the
> scope and terms of each lawyer's representation are defined, thus
> preventing or minimizing uncertainties and disputes. [The client's]
> general understanding that both respondent and Rosenblum were to
> be compensated for their services does not fulfill the rule's
> mandatory writing requirement. For this reason, we cannot agree
> with the Board's assessment of respondent's violation of Rule
> 1.5(f) as a mere technicality." In re Storment, 203 Ill. 2d at 398.

Plaintiffs argue that their action for breach of a fiduciary duty under the facts of this case does not require compliance with Rule 1.5(f).

The plaintiffs rely on Holstein v. Grossman, 246 Ill. App. 3d 719 (1993), to support their position. The complaints in both the case at bar and Holstein started out as complaints in chancery for an accounting. Holstein's complaint had a count based on breach of contract and a count based on breach of a fiduciary duty of loyalty and good faith. Both counts were based on a joint venture. The case at bar contained only the theory of breach of a fiduciary duty based on a joint venture. The applicable supreme court rule in both cases was Supreme Court Rule 2-107.

10

In Holstein the plaintiff-attorney allegedly entered an oral fee-referral agreement with defendants. Plaintiff claimed that the receiving attorney induced him into making the referrals. Under the claimed agreement, plaintiff was to refer personal injury cases to defendants in exchange for a one-half share of any attorney fees that defendants receive on the cases. Defendants would primarily pursue settlement or litigation of the client's claims. Defendants would assume responsibility for the referred clients as if they were a partner of plaintiff and would prepare a written representation agreement which would provide a written disclosure of the forwarding fee agreement between the lawyers in accordance with Supreme Court Rule 2-107, and no fees charged would exceed a reasonable fee. Plaintiff subsequently drafted a model attorney-client contract that he tendered to defendants which plaintiff claimed defendants agreed to use. Defendants never used this agreement, or any written agreement to comply with Supreme Court Rule 2-107, and paid plaintiff in 5 out of 10 referred cases.

Plaintiff filed suit and defendants moved for summary judgment claiming any agreement between the parties was void and unenforceable in violation of public policy as set forth in Supreme Court Rule 2-107. The trial court granted summary judgment, and this court affirmed the trial court based on the contract count holding that by allowing plaintiff to obtain a fee in such instance would violate public policy. As to the count for breach of fiduciary duties of loyalty and good faith, this court reversed on only one of the referral cases carving out a narrow exception to Rule 2-107 in finding that defendants breached their fiduciary duties of loyalty and good faith by their failure to present the model agreement to the client for his approval.

The court stated:

> "It is clear that Illinois public policy cannot endorse
> defendants' alleged misconduct in this case. Receiving attorneys
> cannot be allowed to induce a referring attorney to make a referral
> under the belief that the receiving attorney will obtain Rule 2-107's

11

signed writing requirement. Clearly, the profession will be served if attorneys are bound to their word." Holstein, 246 Ill. App. 3d at 740.

In this narrow exception, this court found that Rule 2-107 did not require the referring attorney to obtain the signed writing containing the necessary disclosures prior to the referral, and that the alleged agreement envisioned compliance with Rule 2-107. However, this court refused to enforce the alleged fee-sharing agreement, holding that public policy dictated that a fee-sharing agreement was not valid unless the referred client consented in writing. This court's decision concluded that there was a valid factual issue for the trier of fact to decide as to whether defendants breached their fiduciary duty by their failure to present the agreement to the client for his approval.

The facts in the case at bar do not fit into the narrow exception promulgated by Holstein. Here, it is plaintiffs' claim that the original retainer agreement and joint venture arrangement extends to the legal malpractice case. We are dealing with one client, who does not support plaintiffs' position, and there is no claim that the receiving attorney induced the referring attorney to make the referral. The plaintiffs were given the opportunity to handle the legal malpractice claim and refused. Their only involvement in that process was their unilateral preparation of some research that they provided to defendants. The referral was not made on the legal malpractice case; it was made on a previous specific pending case in the federal district court.

This court ruled that an oral joint venture fee-sharing agreement was invalid and unenforceable when it did not comply with the disclosure requirements of Rule 1.5(f) in Thompson v. Hiter, 356 Ill. App. 3d 574 (2005). This court, in affirming the trial court, stated, "[t]he contingent fee agreement in this case does not disclose the terms of the oral fee-sharing arrangement of the co-venturers and hence does not comply with the disclosure requirements of Rule 1.5(f), which must be strictly enforced." Thompson, 356 Ill. App. 3d at 590.

Plaintiffs further argue that the standards for enforcing Rule 1.5(f)'s predecessor, Rule 2-107(a)(1) were less strict and should be controlling in this case. Plaintiffs argue that the more lenient standards apply, since the predecessor rule was in effect at the time of the events in question. Plaintiffs are, in other words, arguing that Rule 1.5(f), and its judicial interpretations, should not be applied retroactively.

We disagree. This very argument was rejected in Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 481 (1998), when our Illinois Supreme Court ruled that a supreme court rule is applied retroactively, even though it was different from its predecessor rule, in reliance on the maxim that the law cannot enforce a contract it prohibits based on public policy.

Plaintiffs further claim for the first time in their motion for reconsideration that an action for breach of an implied fiduciary relationship is not governed by the law of contract even though it may arise in the context of a written agreement. Armstrong v. Guigler, 174 Ill. 2d 281 (1996). Our Illinois Supreme Court has held that the duty can arise by legal implication from the parties' relationship under a written agreement. Armstrong, 174 Ill. 2d at 293-94. We agree. The trial court must look to the terms of the instrument (agreement) itself for the determination of duty. Martin v. Rockford Trust Co., 281 Ill. App. 441, 445 (1935). However, under the case at bar this court cannot find any evidence of an implied fiduciary duty or any evidence from the parties' relationship under the written agreement where a duty could arise by legal implication from the parties' relationship.

The plaintiffs further claims that the defendants' failure to comply with Supreme Court Rule 303(a)(3) by failing to file a cross-appeal from the denial of their first summary judgment motion waived any argument in this appeal that the representation agreement of July 5, 1988, is separate from any follow up agreement made by the parties. Supreme Court Rule 303(a)(3) (210 Ill. 2d R. 303(a)(3)) provides that a party has 10 days after being served with a notice of appeal, or 30 days from the entry of the judgment or order being appealed from, or 30 days from the

entry of the order disposing of the last pending post judgment motion, whichever is later, to join an appeal separately or by cross-appeal. This argument is also not persuasive.

In a case similar to the case at bar, this court rejected the same argument raised by plaintiffs here. Solimini v. Thomas, 293 Ill. App. 3d 430 (1997). In the Solimini case, this court noted that while the trial court had rejected one argument advanced by defendants, it had accepted another argument and on that basis had granted judgment for defendants. Plaintiffs contended that because defendants had failed to cross-appeal, they are barred from making an argument based on the rejected argument.

This court, citing our Illinois Supreme Court in Material Service Corp. v. Department of Revenue, 98 Ill. 2d 382, 386 (1983), held that because defendants had obtained by judgment all that had been asked for in the trial court, a cross-appeal was not only unnecessary, but was not permitted.

Our Illinois Supreme Court stated in Material Service:

"A party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." Material Service, 98 Ill. 2d at 386.

Our supreme court reversed the appellate court's refusal to consider a ground rejected by the trial court:

"Findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." Material Service, 98 Ill. 2d at 387.

In the case at bar, the defendants obtained all that they had requested in the trial court summary judgment in their favor and dismissal with prejudice. As Justice Daniel Ward noted in

Material Service, "[i]t is the judgment and not what else may have been said by the lower court that is on appeal to a court of review." Material Service, 98 Ill. 2d at 387. Plaintiffs' legal reasoning for their argument is based on Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign, 101 Ill. 2d 400 (1984).

The Abdul-Karim case is distinguishable from the case at bar. In that case, the defendant prevailed on the merits in the trial court, but a judgment was entered against defendant on its claim for attorney fees. In that case the defendant had not obtained all that had been asked for in the trial court. As a result out Illinois Supreme Court held that the defendants' failure to cross-appeal that portion of the final judgment denying attorney fees barred consideration of the attorneys' fees claim on appeal. In the case at bar, the defendants obtained all the relief requested in the trial court, and therefore were not required to cross-appeal.

Attorneys should act reasonably towards each other. While this court takes note of plaintiffs' arguments founded in equity that defendants should have paid plaintiffs a portion of the fee, we cannot find a legal basis in which to require the defendants to do so.

We conclude as a matter of law that the malpractice action is a matter separate from that included in the original representation agreement, and that defendants have not waived that argument. We conclude as well that any client representation agreement that plaintiffs alleged in this case would be in violation of the requirements of Rule 1.5(f)(2) and (3), and the trial judge was correct to so rule as a matter of law.

CONCLUSION

For the reasons set forth above, we affirm the circuit court's granting of summary judgment in favor of defendants.

Affirmed.

CAHILL and GARCIA, JJ., concur.

No. 1-05-2329