WILLIAM T. DAVIES, Plaintiff-Appellant, v. PAUL W. GRAUER, d/b/a Paul W. Grauer and Associates, Attorneys at Law, Defendant-Appellee.

First District (3rd Division)    No. 1—96—1523

Opinion filed August 27, 1997.

864

William T. Davies, of Streamwood, for appellant.

Henry B. Vess III, of Dommermuth, Brestal, Cobine & West, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, attorney William T. Davies (Davies), filed suit against defendant, attorney Paul W. Grauer (Grauer), seeking one-half of the attorney fees Grauer received in connection with two oral joint venture agreements between Davies and Grauer. Grauer moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)), on the ground that the oral joint venture agreements were unenforceable. Grauer argued that the two oral joint venture agreements violated Rule 2—107 of the Illinois Code of Professional Responsibility, entitled "Division of Fees Among Lawyers."[1] The trial court granted Grauer's motion for summary judgment, from which Davies appeals.

---

[1]The Illinois Supreme Court repealed the Illinois Code of Professional

We reverse and remand.

## BACKGROUND

Davies is an attorney licensed to practice in the State of Illinois. As a sole practitioner, Davies' general practice includes divorce, real estate and criminal cases, with 20% of his practice devoted to personal injury matters. In 1985, Davies and Grauer entered into two oral joint venture agreements to represent Norman Rosser and John Metz in their respective personal injury suits.

The Rosser Case

In August of 1984, Norman Rosser (Rosser), a client of Davies for many years, contacted Davies regarding the death of Rosser's wife. On July 31, 1984, Evelyn Rosser was killed when she was struck by her own automobile. Davies consulted with Rosser about the possibility of a product liability suit. Davies informed Rosser that, if there was a case, Davies would represent him for a one-third contingent fee. Davies also informed Rosser that he would bring in another attorney with an engineering background to work on the case and that Davies and the other attorney would split the attorney fees from the one-third contingent fee. Prior to Grauer's involvement, Davies expended approximately 100 hours on the case and hired an engineer to investigate the cause of the accident.

On or about August 1, 1985, Davies spoke with Grauer about the case. Prior to that date, Davies had never referred a case to Grauer, nor had the two worked together as associates or partners in the same law firm. In his amended complaint, Davies alleged that he and Grauer entered into an oral joint venture agreement, subject to the client's approval. Davies and Grauer were to split the attorney fees equally, with Davies' contribution being the exploratory work he completed prior to Grauer's involvement in the case and the referral of the case and Grauer's contribution being the filing of the case and either settling or taking the matter to trial. In his deposition, Davies also alleged that he and Grauer agreed that Davies' name would appear on all documentation in the case. However, none of the pleadings filed included Davies as counsel of record. In his answer to Davies' amended complaint, Grauer denied the specifics of the agree-

---

Responsibility in 1990 and replaced it with the Illinois Rules of Professional Conduct. See 134 Ill. 2d art. VIII. Rule 2—107 of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 2—107) is substantially in the same form as Rules 1.5(f) through (j) of the new Rules of Professional Conduct (134 Ill. 2d Rs. 1.5(f) through (j).

ment alleged by Davies. However, in his motion for summary judgment, Grauer admitted that, on or about August 1, 1985, Davies and Grauer entered into an oral joint venture agreement whereby Davies referred the Rosser case to Grauer to be handled on a contingent fee basis with the fee to be divided equally between Davies and Grauer. Grauer also admitted in his motion for summary judgment that he was to draft the written fee agreement to be signed by Rosser consenting to the referral and the division of fees. Rosser confirmed Grauer's admission by stating in his affidavit that "Davies told me that Grauer would make out the fee arrangement."

On August 27, 1985, Rosser and Grauer signed a contingent fee agreement whereby Rosser retained Grauer to represent him regarding the accident. The contingent fee agreement made no reference to Davies nor did it contain any reference to a division of fees between Davies and Grauer. On September 20, 1985, Davies sent Grauer a letter requesting acknowledgment of their joint venture agreement. Grauer never returned an acknowledgment of the agreement. In his deposition, when asked why he never asked Grauer about acknowledgement of the agreement Davies said, "It just never entered my mind that he would not honor the agreement."

Over the next eight years, Davies was kept informed of case developments. Davies also met with Rosser periodically to discuss the case. Davies called Rosser on or about June 1, 1993, to discuss the status of the case. During this conversation, Rosser informed Davies that the case had been settled "some time ago" for $953,000. Grauer received attorney fees in the amount of $317,666.68. On July 22, 1993, Rosser signed a letter drafted by Grauer and addressed to Davies. The letter included the statement, "I understand that you will pay attorney Bill Davies for any services that he has performed out of your attorney fees." On July 24, 1993, Grauer sent Davies a check for attorney fees in the amount of $27,600. Davies never negotiated the check. On March 23, 1995, Davies filed a first amended complaint against Grauer alleging, *inter alia*, that: (1) Grauer breached his fiduciary relationship with Davies under the joint venture agreement and (2) Grauer converted the balance of attorney fees allegedly due Davies to his own use.

The Metz Case

On August 29, 1986, John Metz (Metz), was involved in an automobile accident. Metz's mother called Davies the day the accident occurred to discuss legal representation. Davies had been the Metzes' family attorney for many years. In October of 1986, Davies and Grauer discussed the referral of the Metz case to Grauer. Davies

and Grauer entered into an oral joint venture agreement on the same terms as in the Rosser case. In his affidavit, Metz stated that he understood that Davies and Grauer were to split any attorney fees equally. Metz signed a contingent fee agreement with Grauer. The contingent fee agreement did not refer to Davies, nor did it mention a division of fees between Davies and Grauer. However, in his affidavit, Metz stated that the contract said "Paul Grauer & Associates" and he assumed that "associates" included Davies.

In 1994, the Metz case was settled for $55,000. Grauer received attorney fees in the amount of $18,333.33. Davies received no part of the attorney fees. When Davies informed Metz that he did not receive his half of the attorney fees, Metz sent a letter to Grauer demanding that he pay Davies his half. Metz stated in his letter, "[w]hen you first took my case, Mr. Davies was my lawyer and he and you were to share in the case all fees equally." Davies never received any portion of the fee.

Davies filed a first amended complaint on March 23, 1995, that included attorney fees involved in the Metz case and further alleged breach of fiduciary duty, conversion of attorney fees, and willful and wanton misconduct calculated to misrepresent, deceive and defraud Davies and unjustly enrich Grauer.

Grauer filed a motion for summary judgment on January 5, 1996. After a hearing, the trial court granted Grauer's motion for summary judgment. The trial court found that Davies could not prevail on his breach of fiduciary duty and punitive damages claims because to allow recovery would violate public policy relating to attorney-client contingency agreements. Davies appeals.

We reverse and remand.

## ANALYSIS

■ Davies first contends that the trial court erred in granting summary judgment to Grauer because the two oral joint venture agreements were not unenforceable as a matter of public policy. In summary judgment cases, the reviewing court conducts a *de novo* review of the evidence. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. *Espinoza*, 165 Ill. 2d at 113. If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 617 N.E.2d 1346 (1993). Thus, summary judgment is proper if and only if pleadings, depositions, admissions, affidavits, and other relevant matters on file show that there is no gen-

uine issue of material fact and that the movant is entitled to judgment as a matter of law. *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 619 N.E.2d 172 (1993).

■ Illinois Code of Professional Responsibility Rule 2—107 governs fee-splitting agreements among lawyers. 107 Ill. 2d R. 2—107. Rule 2—107 provides in pertinent part:

"(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless

(1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b). the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;

(2) the division is made in proportion to the services performed and responsibility assumed by each, except where the primary services performed by one lawyer is the referral of the client to another lawyer and (a) the receiving lawyer fully discloses that the referring lawyer has received or will receive economic benefit and (b) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer ***." 107 Ill. 2d R. 2—107.

The purpose of Rule 2—107 is to preserve the fiduciary relationship between a client and his attorney through disclosure of fee-sharing arrangements, thereby leading to greater accountability. Grauer mistakenly relies on *Holstein v. Grossman*, 246 Ill. App. 3d 719, 725, 616 N.E.2d 1224 (1993), to support his contention that the two oral joint venture agreements are unenforceable because they violate Rule 2—107. In *Holstein*, the court squarely addressed Rule 2—107 and its application to oral fee-splitting agreements. We distinguish the facts in *Holstein* from the instant case.

In *Holstein*, plaintiff-attorney Holstein allegedly entered into an oral fee-referral agreement with defendant attorney Grossman. Holstein and Grossman agreed that Holstein was to refer personal injury cases in exchange for a one-half share of attorney fees. Holstein drafted a model attorney-client contract, which disclosed the referral to Grossman, the division of responsibility between Holstein and Grossman and the division of fees. However, Grossman never used the attorney-client contract drafted by Holstein. Clients referred by Holstein to Grossman signed a standard contract with

Grossman containing no disclosures regarding the arrangement between Holstein and Grossman. Grossman moved for summary judgment, asserting that the alleged fee-referral arrangement violated Rule 2—107 and therefore the arrangement was illegal and unenforceable. This court held that an intra-attorney fee-sharing agreement that is primarily based on a client referral is unenforceable as a matter of public policy where the undisputed facts show that the referred client never consented in writing to the attorneys' arrangement. *Holstein*, 246 Ill. App. 3d at 725. The court further held that there was no substantial compliance with Rule 2—107 because there was no written consent. *Holstein*, 246 Ill. App. 3d at 736. The referred clients had no knowledge of the fee-referral arrangement between Holstein and Grossman.

Grauer also mistakenly relies on *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1011, 654 N.E.2d 275 (1995). In *Anderson*, Rose Marie Anderson and Frank Anderson engaged Joan Schiller Travis, an attorney, to represent them as an attorney in a medical malpractice action. Then, Travis contacted attorney Kenneth C. Chessick and, without the written consent of the Andersons, retained Chessick as cocounsel. Travis and Chessick orally agreed to divide equally the fees and costs. Both Travis and Chessick rendered legal services and advanced costs in furtherance of plaintiffs' action.

Approximately five years after the medical malpractice action had been filed by Chessick and Travis, the plaintiffs wrote letters to Travis discharging her as their attorney and stating that Chessick would act as their attorney. In *Anderson*, the court held that plaintiffs never consented in writing to the employment by Travis of the other attorney and, as a consequence, Travis' fee-sharing agreement with Chessick was unenforceable. *Anderson* 274 Ill. App. 3d at 1011. In our view, *Anderson* is more analogous to *Holstein* than to the instant case and facts in both *Holstein* and *Anderson* are dissimilar to the facts in the instant case.

■ An instructive case is *Phillips v. Joyce*, 169 Ill. App. 3d 520, 523 N.E.2d 933 (1988). In *Phillips*, the court, in upholding a fee-splitting agreement, made an extensive analysis of the development of Disciplinary Rule 2—107 of the Illinois Code of Professional Responsibility, entitled "Division of Fees Among Lawyers." 107 Ill. 2d R. 2—107. In deciding the case, the *Phillips* court wrote:

> "To determine which agreements violate the canons of ethics, then, we must consider the underlying policy considerations and the harm to be avoided by the particular disciplinary rule.
>
> Disciplinary Rule 2—107 aims to preserve the fiduciary rela-

tionship between a client and his attorney through disclosure of fee-sharing arrangements, thereby leading to greater accountability. In addition, the rule contains a proportionality concept, which can be viewed as protecting the client from unearned or excessive fees. Requiring a relationship between the fee claimed and services or responsibility assumed also ensures that the attorney will have the incentive to use his best efforts to resolve the case. [Citation.]

It is readily apparent that DR 2—107 mandates disclosure to the client whenever his attorney enters into an agreement with another attorney to share fees and responsibility for the legal matters entrusted to the first attorney. Hence, the client's right to be represented by the attorney of his choosing is preserved. No attorney whom the client has not retained will be entitled to payment from the client via a secret deal with the client's attorney. Instead, the client must consent in writing to the shared fee and shared responsibility.

* * *

We believe, however, that a standard of substantial compliance is preferable because it comports with practical realities. In fact, such a standard is consonant with the Illinois Supreme Court's opinion in *Kravis v. Smith Marine, Inc.* and other cases that have considered the scope of the disclosure requirement. One court, faced with a similar question involving the disclosure of a fee-sharing agreement to a client, found that the client presumably knew of the arrangement, if not the details, stating, 'This method of dealing admittedly may not strictly comport with the guidelines of section DR 2—107 of the Code of Professional Responsibility, but it certainly does not fall far from this section's ethical parameters.' *Carter v. Katz, Shandell, Katz and Erasmous* (1983), 465 N.Y.S.2d 991, 997, 120 Misc. 2d 1009, 1015 (construing ABA version of the disciplinary rule)." (Emphasis omitted.) *Phillips,* 169 Ill. App. 3d at 529-31.

■ In the instant case, we believe that the admitted facts establish that the disclosures made to Rosser and Metz constitute substantial compliance with Rule 2—107. Such a standard of substantial compliance is consonant with *Phillips,* 169 Ill. App. 3d 520, 523 N.E.2d 933, and also with the Illinois Supreme Court's opinion in *Kravis v. Smith Marine, Inc.,* 60 Ill. 2d 141, 324 N.E.2d 417 (1975).

In the instant case, oral disclosures were made to both Rosser and Metz regarding the fee-sharing arrangement between Davies and Grauer. Further, both Rosser and Metz retained Davies as their attorney, not Grauer, in the first instance. In Metz's sworn affidavit, he

stated that he knew Davies and Grauer were to split the attorney fees equally and that, when he signed the contingent fee agreement, he thought Davies was included because he assumed the word "associates" in "Paul Grauer & Associates" included Davies. Rosser, in his sworn affidavit, also admitted to knowing that Davies and Grauer would split the fees. We believe both Rosser and Metz had sufficient information regarding the fee-sharing agreement between Davies and Grauer to be fully protected under Disciplinary Rule 2—107 and that the aims of Disciplinary Rule 2—107 have been fulfilled.

However, in our view, even were we to hold that the oral joint venture agreements were not in substantial compliance with Disciplinary Rule 2—107, we believe that the trial court erred in dismissing the first amended complaint against Davies. Although the general rule is that a fee-splitting agreement between attorneys is unenforceable, summary judgment should not be entered in this case because there are genuine issues of material fact as to whether Grauer breached his fiduciary duty to honor the joint venture agreement with Davies.

In the case *sub judice,* Davies' primary contention is that Grauer breached his fiduciary duty to him by not honoring the two oral joint venture agreements. The trial court granted Grauer's motion for summary judgment because the court found the oral joint venture agreements to be *per se* violative of public policy. See *Holstein,* 246 Ill. App. 3d at 735; *Phillips,* 169 Ill. App. 3d at 532. In our view, the trial court erred.

We disagree with the trial court's failure to address Davies' claim for breach of fiduciary duty because oral joint venture agreements are not *per se* violative of public policy. See *Holstein,* 246 Ill. App. 3d at 735; *Phillips,* 169 Ill. App. 3d at 532. Actions for breach of fiduciary duty are not contract actions. This distinction, we believe, requires that our paramount concern becomes the effect such agreements have on the attorneys involved. *Holstein,* 246 Ill. App. 3d at 740. When clients are fully protected through full or substantial compliance with Disciplinary Rule 2—107, the rule " 'should not be too readily construed as a license for attorneys to break a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics.' " *Phillips,* 169 Ill. App. 3d at 535, quoting *Baron v. Mullinax, Wells, Mauzy & Baub, Inc.,* 623 S.W.2d 457, 462 (Tex. Ct. App. 1981). "If an attorney uses his own illegal conduct as an excuse for breaching his contract, he not only violates a disciplinary rule (for which separate sanctions may be imposed in the appropriate forum) but he also commits a second wrong, dishonoring his contractual promise." *Phillips,* 169 Ill. App. 3d at 535 n.10.

In our view, Illinois public policy cannot reward Grauer's alleged misconduct in this case. Both Rosser and Metz affirmed that they had retained Davies and that they knew that Davies and Grauer would split the attorney fees. Grauer admitted for the purpose of his summary judgment motion that he entered into both oral joint venture agreements and that he was to draft the attorney-client agreement disclosing joint representation. However, Grauer admitted that he failed to draft the agreement. Grauer further admitted that he did not include Davies in the attorney-client agreements that Rosser and Metz signed, which he was required to do under the oral fee-sharing agreement. Accordingly, in the instant case, Grauer cannot invoke Disciplinary Rule 2—107 as a shield against living up to an allegedly substantively unobjectionable contractual arrangement with Davies. See *Freeman v. Mayer*, 95 F.3d 569, 575 (7th Cir. 1996).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LEAVITT and CAHILL, JJ., concur.