# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Donald W. Fohrman & Associates, Ltd. v. Marc D. Alberts, P.C.*,
### 2014 IL App (1st) 123351

</div>

| | |
|---|---|
| Appellate Court Caption | DONALD W. FOHRMAN AND ASSOCIATES, LTD., Plaintiff and Counterdefendant-Appellant, v. MARC D. ALBERTS, P.C., and MARC D. ALBERTS, Individually and as Agent of Marc D. Alberts, P.C., Defendants and Counterplaintiffs-Appellees (Smith and Alberts, a Partnership, Defendant; Marc D. Alberts, P.C., and Marc D. Alberts, Third-Party Plaintiffs; and Donald W. Fohrman, Third-Party Defendant). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-12-3351, 1-13-0692 cons. |
| Filed | March 14, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant breached an oral agreement under which plaintiff law firm referred certain personal injury and medical malpractice cases to defendant and was to share the fees with defendant, the trial court properly dismissed plaintiff's amended complaint, since the complaint did not completely comply with the requirements of Rule 1.5(e) of the Illinois Rules of Professional Conduct and plaintiff failed to meet its own fiduciary duty to disclose the referral agreement to its clients; furthermore, summary judgment was properly entered for defendant on the issue of the unenforceability of plaintiff's attorney liens. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2011-CH-03229; the Hon. Stuart E. Palmer and the Hon. Thomas Allen, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robinson Shapiro & Schwartz, LLC (Anthony M. Sciara, of counsel), and Mark L. Karno & Associates (Mark L. Karno, of counsel), both of Chicago, for appellant.

Tabet DiVito & Rothstein LLC, of Chicago (Gino L. DiVito, Mark H. Horwitch, and John M. Fitzgerald, of counsel), for appellees.

Panel

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and the opinion.

## OPINION

¶ 1    Plaintiff, Donald W. Fohrman & Associates, Ltd. (Fohrman), a law firm, brought this suit against defendants, Mark D. Alberts, P.C., and Marc D. Alberts, a lawyer, individually and as agent of Marc D. Alberts, P.C. (together, Alberts), and others. The parties' dispute arose out of an oral agreement for sharing attorney fees based solely on referrals by Fohrman, but the corresponding attorney-client representation agreements did not strictly comply with Rule 1.5(e) of the Illinois Rules of Professional Conduct (Rules). Ill. R. Prof. Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010). Fohrman, in addition to bringing this action, also served notices of attorney liens as to certain referred cases. Alberts challenged the liens in a counterclaim and third-party action. After the circuit court dismissed all counts of Fohrman's amended complaint with prejudice, it entered summary judgment in favor of Alberts and against Fohrman on the declaratory count of their amended counterclaim/third-party action after finding the liens were unenforceable. We affirm.

¶ 2                          BACKGROUND

¶ 3    On January 25, 2011, Fohrman filed its original complaint against Alberts. Fohrman, which specializes in workers' compensation litigation, alleged it entered into an oral referral fee agreement (referral agreement) in 2005 with Alberts, which specializes in personal injury litigation. Pursuant to the referral agreement, Fohrman was to refer clients with personal injury and medical malpractice cases to Alberts and receive 50% of any attorney fees obtained from the referred cases. Fohrman alleged that Alberts agreed to regularly report on the status of the referred cases and promptly pay Fohrman its share of any fees. The complaint asserted the referral agreement gave rise to a fiduciary duty which Alberts owed to Fohrman and Alberts breached this duty by failing to fulfill their responsibilities under the referral agreement. Fohrman alleged, "[i]n each and every [referred] matter, the clients executed an attorney client agreement which reflected that [Fohrman] *** was co-counsel and entitled to be compensated out of any recovery to be had." The complaint attached a sample copy of the attorney-client agreement. The complaint included four counts against Alberts: breach of fiduciary duty

- 2 -

(count I); accounting (count II); breach of contract (count III); and fraud (count IV). Fohrman later added a fifth count entitled: "TRO/Preliminary Injunction/Appointment of a Receiver" (count V).

¶ 4    Alberts moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (the Code). 735 ILCS 5/2-615 (West 2010). Alberts argued in part that the attorney-client agreement attached to the complaint did not comply with Rule 1.5(e) in that it did not inform the client: (1) the primary service performed by Fohrman was the referral of the matter to Alberts; (2) whether Fohrman and Alberts were assuming joint financial responsibility for the representation; and (3) how the fees were to split. On April 4, 2011, the circuit court dismissed Fohrman's breach of contract claim with prejudice because the attorney-client agreement did not comply with Rule 1.5(e).

¶ 5    The circuit court also dismissed Fohrman's remaining claims (*i.e.*, breach of fiduciary duty, accounting, fraud, and "TRO/Preliminary Injunction/Appointment of a Receiver") without prejudice. The circuit court allowed Fohrman an opportunity to amend its complaint as to these counts "to see if [it] can plead [itself] within the confines of the exception [as to the requirement that a fee-sharing agreement strictly comply with the ethical rules] that was set forth in the *Holstein* [*Holstein v. Grossman*, 246 Ill. App. 3d 719 (1993)] case."

¶ 6    On May 11, 2011, Fohrman filed its amended complaint which repled claims for breach of fiduciary duty (count I), accounting (count II), and fraud (counts V and VI), and included three new causes of action: (1) unjust enrichment (count III); (2) promissory estoppel (count IV); and (3) tortious interference with prospective economic advantage (count VII). The amended complaint also added Martin A. Smith, P.C., and Smith & Alberts–a law partnership of which Martin A. Smith, P.C., and Marc D. Alberts, P.C., were the general partners–as defendants.

¶ 7    According to the amended complaint, in early 2004 (not 2005 as alleged in the original complaint), Fohrman began referring its clients with personal injury and medical malpractice cases to Smith & Alberts pursuant to the referral agreement which Fohrman's president, Donald Fohrman, on behalf of Fohrman, entered into with Marc D. Alberts, on behalf of Smith & Alberts. The terms of the referral agreement were alleged to be:

> "FOHRMAN would refer his clients to SMITH & ALBERTS, A Partnership, and in exchange for the referral, SMITH & ALBERTS, A Partnership, acting through MARC D. ALBERTS, would assure that all of FOHRMAN's clients were properly represented in their bodily injury claims; further that the co-counsel arrangement would be properly disclosed to the clients in conformity with all applicable Supreme Court Rules governing attorney discipline; that FOHRMAN, would be sharing equal legal responsibility for the progress of client matters; that FOHRMAN would receive periodic updates as to the progress of his clients' cases ***; and that FOHRMAN would receive 50% of whatever attorney fees that were generated by any particular personal injury claim of any of his clients that he referred to MARC D. ALBERTS who at the time of their agreement was acting on behalf of SMITH & ALBERTS, A Partnership."

Fohrman alleged that by virtue of the referral agreement, Fohrman and Alberts and Smith & Alberts formed a joint venture and owed one another fiduciary duties. The amended complaint described different categories of referred cases and set forth the following history and time line relating to the parties' course of conduct.

¶ 8        According to the amended complaint, Fohrman initially referred 21 clients to Smith & Alberts who each signed an attorney-client agreement retaining only Smith & Alberts, but also signed a fee-sharing disclosure form (category I). Fohrman does not claim any nonpayment of referral fees as to this category.

¶ 9        Fohrman alleged that in February 2005, Smith & Alberts, through Marc D. Alberts, changed the form of the attorney-client agreement and stopped using the fee-sharing disclosure form. After February 2005, the attorney-client agreements now provided that the referred client retained both Smith & Alberts and Fohrman and agreed to pay the attorneys 33• % of any recovery. Fohrman alleged that Marc D. Alberts "assured Donald W. Fohrman that the [new client agreements were] in full compliance with all applicable Supreme Court Rules regarding the disclosures of co-counsel arrangements to clients." There were 54 referred cases in this category II group.

¶ 10       The amended complaint alleged that on March 17, 2006, Alberts "presumptively ended its partnership in Smith & Alberts," and Alberts then began using yet another form of attorney-client agreement which listed Marc D. Alberts, P.C., and Fohrman as the attorneys retained and that the attorneys would be paid 33• % of any recovery. Fohrman alleged that 143 clients (category III) were referred to Alberts after March 17, 2006. Fohrman alleged Marc D. Alberts assured him the attorney-client agreements for category III cases complied with the applicable Rules. Alberts allegedly failed to disclose that in 2008, Martin Smith had filed a complaint against Alberts and Smith & Alberts which raised an issue about referral fees paid to Fohrman on cases where the clients had not been informed of the referral agreement and Fohrman had not provided legal services to the clients.

¶ 11       The amended complaint included two cases in category IV where referral fees had not been paid. In both cases, Fohrman had represented the clients in their workers' compensation claims, which were settled for $1 so that the clients' third-party liability claims could be resolved expeditiously. Fohrman received no compensation for its representation on the workers' compensation matters, but expected that its referral fees as to the third-party liability claims would be paid. The amended complaint also described cases in a category V, which included cases in categories II and III, where the clients had both workers' compensation claims and third-party claims arising out of the same incidents. Fohrman claimed referral fees as to the third-party claims. Finally, Fohrman, in the amended complaint, also sought referral fees for an action that Alberts had brought on behalf of a minor child. The suit was related to and arose out of the same incident involving a referred case brought on behalf of the mother of the minor, who was pregnant with the minor at that time.

¶ 12       The amended complaint contended that in November 2010, Marc D. Alberts admitted to Donald W. Fohrman that "he had not been totally truthful with him" and that he had not completed any status reports.

¶ 13       The amended complaint attached copies of the various attorney-client agreements for referred clients. Fohrman alleged that based on the listing of Fohrman and Alberts, it was "presumptive" that the contingency fee would be split on a "50/50 basis," and both firms "were equally responsible to the client for the progress of the case, and subject to liability should either law firm commit any malpractice."

¶ 14       According to the amended complaint, from 2004 to August 2010, pursuant to the referral agreement, Fohrman was paid $733,512.83 in fees on 87 referred cases. Fohrman claimed, however, that beginning in April 2009, it had not received its 50% share of the attorney fees on

certain referred cases which had settled, or had been otherwise resolved, and was owed in excess of $100,000.

¶ 15    The amended complaint did not allege that Fohrman had in fact assumed joint financial responsibility on the referred cases and did not allege any work performed by Fohrman on the matters referred to defendants. The amended complaint alleged the equal split of the fees could be presumed, but did not allege the clients actually knew or were told the fees were to be equally shared.

¶ 16    On June 10, 2011, Alberts and Smith & Alberts (collectively, defendants) moved to dismiss the amended complaint pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2010). Defendants argued, as they did in the prior motion to dismiss, the attorney-client agreements attached to the amended complaint did not comply with Rule 1.5(e). In opposition to the motion, Fohrman argued the attorney-client agreements "substantially complied" with Rule 1.5(e) and, therefore, under *Holstein*, the referral agreement was enforceable. Fohrman also argued the referral agreement should be enforced due to Alberts' inequitable conduct.

¶ 17    On July 26, 2011, after a hearing, the circuit court entered an order that dismissed with prejudice count III (unjust enrichment), count IV (promissory estoppel), count V (fraud), count VI (fraud), and count VII (tortious interference with prospective economic advantage) of the amended complaint.

¶ 18    The circuit court denied the motion to dismiss the breach of fiduciary duty claim (count I) and the corresponding accounting claim (count II), finding that Fohrman adequately pled claims within the parameters of *Holstein*, but acknowledged it was a "close call."

¶ 19    On July 26, 2011, pursuant to a stipulation, the suit was dismissed against Martin A. Smith, P.C.

¶ 20    On September 14, 2011, defendants filed an answer and affirmative defenses as to counts I and II, and Alberts filed a counterclaim against Fohrman, and a third-party complaint against Donald W. Fohrman. In the answer, defendants denied there was a referral agreement and denied Marc D. Alberts had assured Donald W. Fohrman the attorney-client agreements were in full compliance with the ethical rules. The affirmative defenses (*in pari delicto*, unclean hands, breach of fiduciary duty, and ratification) asserted Fohrman was fully aware of the contents of the attorney-client agreements and failed to inform its clients of the referral agreement and obtain its clients' consent to the referral agreement. Alberts' amended seven-count counterclaim/third-party action included a declaratory count (count VI). In that count, Alberts alleged that based on the referral agreement, Fohrman served notices of attorney liens in several of the pending referred cases where Alberts was counsel of record. Alberts sought the following relief: (1) a declaration that the attorney liens were invalid; and (2) an order requiring Fohrman to withdraw its attorney liens in those cases.

¶ 21    On April 27, 2012, defendants moved to dismiss the amended complaint's remaining claims–breach of fiduciary duty and accounting–pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2010)), on the basis that affirmative matter established that the use of the noncompliant attorney-client agreements was fully disclosed to Fohrman. Defendants further argued the *Holstein* exception to the general rule barring claims for fees based on a fee-sharing agreement that is not disclosed to a client in strict compliance with Rule 1.5(e) was not applicable.

¶ 22    In support of their motion, defendants relied on an affidavit of Donald W. Fohrman, which had been filed during the proceedings. In the affidavit, Donald W. Fohrman admitted Marc D. Alberts had provided him "at different times" copies of the attorney-client agreements for "each" referred case. Attached to the affidavit were examples of the attorney-client agreements signed by the clients that Fohrman referred to defendants. Throughout the affidavit, Donald W. Fohrman refers to the referred clients as "my clients." Additionally, defendants asserted that during discovery, Fohrman produced all of the attorney-client agreements and the accompanying transmittal letters from Marc D. Alberts that Fohrman had received from 2005 to 2010. Defendants argued that unlike in *Holstein*, Fohrman had notice of "the noncompliant Attorney-Client Agreements and *** allowed them to be used."

¶ 23    In its opposition to the section 2-619(a)(9) motion, Fohrman argued the attorney-client agreements "substantially complied" with Rule 1.5(e) and, thus, its claims for referral fees were well made. Fohrman also argued its claims for referral fees should stand because Marc D. Alberts had acted nefariously and had "assured" Donald Fohrman that the attorney-client agreements complied with Rule 1.5(e).

¶ 24    On September 19, 2012, the circuit court granted defendants' section 2-619(a)(9) motion and dismissed with prejudice the amended complaint's remaining claims for breach of fiduciary duty and accounting.

¶ 25    On November 1, 2012, Alberts moved for partial summary judgment on count VI of the amended counterclaim/third-party action. Alberts argued that because Fohrman's attorney liens were based on the attorney-client agreements that did not comply with Rule 1.5(e), Fohrman had no legal basis for the recovery of fees in any of the cases in which it asserted liens. Before the hearing on the motion for summary judgment, the other counts of the amended counterclaim/third-party complaint, by stipulation, were dismissed. On February 4, 2013, the circuit court granted summary judgment against Fohrman and Donald Fohrman on count VI of the amended counterclaim/third-party action and declared the liens at issue were invalid and ordered Fohrman to withdraw its liens within 30 days. Fohrman then appealed.

¶ 26    The appeal is from: (1) the order dismissing with prejudice counts III through VII of the amended complaint under section 2-615; (2) the order dismissing with prejudice counts I and II of the amended complaint under section 2-619; and (3) the order granting summary judgment on count VI of the amended counterclaim/third-party action. Fohrman, on appeal, has not challenged the circuit court's dismissal of the breach of contract claim in the original complaint with prejudice.

¶ 27    A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint and raises a question as to whether the complaint states a cause of action upon which relief may be granted. 735 ILCS 5/2-615 (West 2010). In ruling upon a section 2-615 motion to dismiss, a court must decide whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a claim upon which relief may be granted. *Givot v. Orr*, 321 Ill. App. 3d 78, 84 (2001). In making this determination, a court accepts all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 767 (2007).

¶ 28    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matters that avoid the legal effect or defeat a claim. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). In reviewing a grant of a section 2-619 motion to dismiss, we accept as true all well-pleaded facts in the complaint, draw all

reasonable inferences from those facts in the plaintiff's favor, and interpret all pleadings and supporting documents in the light most favorable to the plaintiff. *Capeheart v. Terrell*, 2013 IL App (1st) 122517, ¶ 11.

¶ 29　　Summary judgment is properly entered where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Our review of an order granting summary judgment and orders granting a section 2-619 or section 2-615 motion is *de novo*. *Schultz v. Illinois Farmers Insuran*ce *Co*., 237 Ill. 2d 391, 399-400 (2010); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003); *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 586 (2004).

¶ 30　　On appeal, Fohrman argues the circuit court erred in dismissing the entire amended complaint and entering summary judgment against it as to the enforceability of the attorney liens by "ignor[ing] the continuing vitality of the substantial compliance doctrine." Put another way, Fohrman believes its liens and claims for the recovery of referral fees are viable when there has been substantial compliance with Rule 1.5(e). Fohrman further argues that the circuit court misapplied the *Holstein* holding when it dismissed the fiduciary duty and accounting claims. Defendants argue the circuit court correctly required strict compliance with Rule 1.5(e) when it dismissed the amended complaint and granted summary judgment as to the liens. Defendants further argue the circuit court properly dismissed the breach of fiduciary and accounting claims pursuant to *Holstein* where Fohrman was fully aware of the use of the noncompliant attorney-client agreements.

¶ 31　　The questions presented require an analysis of the ethical rules pertaining to fee-sharing agreements based solely on referrals. Prior to the adoption of Rule 2-107 of the Illinois Code of Professional Responsibility (Ill. S. Ct. Code of Prof. Res. R. 2-107 (eff. July 1, 1980)), fee-sharing agreements based solely on the referral of clients were prohibited.[1] *Albert Brooks*

---

[1]Rule 2-107 provided in pertinent part:

　　"(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless

　　　　(1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;

　　　　(2) the division is made in proportion to the services performed and responsibility assumed by each, except where the primary service performed by one lawyer is the referral of the client to another lawyer and (a) the receiving lawyer fully discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit and (b) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer; and

　　　　***

　　　　(4) For purposes of this rule, 'economic benefit' shall include (a) the amount of participation in the fee received with regard to the particular matter; (b) any other form of remuneration passing to the referring lawyer from the receiving lawyer, whether or not with regard to the particular matter; and (c) an established practice of referrals to and from or from and to the receiving lawyer and the referring lawyer." Ill. S. Ct. Code of Prof. Res.

*Friedman, Ltd. v. Malevitis*, 304 Ill. App. 3d 979, 985 (1999). Such agreements were considered to be contrary to public policy and disfavored. See *Corti v. Fleisher*, 93 Ill. App. 3d 517 (1981) (referral agreements considered not to be in the best interests of the client). Rule 2-107 allowed such agreements, but provided "safeguards designed to protect the client." *Friedman*, 304 Ill. App. 3d at 985. The Illinois Code of Professional Responsibility was repealed and replaced with the Illinois Rules of Professional Conduct (the Rules) in 1990. *Davies v. Grauer*, 291 Ill. App. 3d 863, 864 n.1 (1997). Safeguards as to referral agreements continue to exist under the current ethical rules. *Friedman*, 304 Ill. App. 3d at 985.

¶ 32  We must consider the referral agreement and attorney-client agreements here under the applicable rules as they currently exist. See Ill. R. Prof. Conduct (2010) R. 1 *et seq.* (eff. Jan. 1, 2010); see also *Paul B. Episcope, Ltd. v. Law Offices of Campbell & Di Vincenzo*, 373 Ill. App. 3d 384, 394 (2007) (a "supreme court rule is applied retroactively, even though it was different from its predecessor rule" (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 481 (1998))).

¶ 33  Rule 1.5 governs the propriety of attorney-fee agreements. The provisions of Rule 1.5 "operate with the force and effect of law." *Romanek v. Connelly*, 324 Ill. App. 3d 393, 399 (2001). "Contracts between lawyers that violate Rule 1.5 are against public policy and cannot be enforced." *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 564 (2000). See also *In re Vrdolyak*, 137 Ill. 2d 407, 422 (1990) (where the supreme court held the disciplinary code "as a binding body of disciplinary rules, has, *sub silentio*, overruled prior judicial decisions which conflict with its mandates and proscriptions").

¶ 34  Rule 1.5(e)[2] applies to agreements for the division of fees between lawyers who are not in the same firm, and states:

> "(e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
>> (1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;
>> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
>> (3) the total fee is reasonable." Ill. R. Prof. Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

Rule 1.5(e), therefore, allows "lawyers to divide a fee either on the basis of the proportion of services they render or, where the primary service performed by one lawyer is the referral of the client to another lawyer, if each lawyer assumes financial responsibility for the representation as a whole." Ill. R. Prof. Conduct (2010) R. 1.5(e), Committee Comments (eff. Jan. 1, 2010). "Joint financial responsibility for the representation entails financial responsibility for the representation as if the lawyers were associated in a general partnership."

---

R. 2-107 (eff. July 1, 1980).

[2]Rule 2-107 was recodified in 1990 as Rule 1.5(f) (Ill. R. Prof. Conduct (2010) R. 1.5(f) (eff. Jan. 1, 1990)), which was then recodified as Rule 1.5(e) (Ill. R. Prof. Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010)).

*Id.* (citing *In re Storment*, 203 Ill. 2d 378 (2002)). The client must agree to the fee division and the "agreement must be confirmed in writing." Ill. R. Prof. Conduct (2010) R. 1.5(e), Committee Comments (eff. Jan. 1, 2010).

¶ 35   Rule 1.5 "embod[ies] this state's public policy of placing the rights of clients above and beyond any lawyer's remedies in seeking to enforce fee-sharing arrangements." *Romanek*, 324 Ill. App. 3d at 399; *Richards*, 311 Ill. App. 3d at 564 (The requirements of Rule 1.5 are "designed to protect the client."). This public policy embodies an understanding "that the client's rights rather than the lawyers' remedies have always been this state's greatest concern." *Friedman*, 304 Ill. App. 3d at 985. "While the [Rules of Professional Conduct] expressly approve[ ] of fee-sharing agreements where the primary service performed by one lawyer is the referral of the client to another lawyer [citation], such arrangements cannot rest on the referral alone. Most importantly, the referring attorney must assume 'the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer.' [Citation.]" *Romanek*, 324 Ill. App. 3d at 403; *Storment*, 203 Ill. 2d at 398 (The court said, as to then-Rule 1.5(f): "The writing must not only authorize a division of fees, but also set out the basis for the division, including the respective responsibility to be assumed and economic benefit to be received by the other lawyer.").

¶ 36   As discussed, Fohrman does not appeal from the dismissal of its claim that Alberts breached the referral agreement. Fohrman acknowledges the relevant attorney-client agreements at issue that are attached to the amended complaint do not strictly comply with Rule 1.5(e). The agreements stated that the clients had retained Fohrman and Alberts or Smith & Alberts. The attorney-client agreements did not set forth how the attorney fees would be split or shared by the firms and, thus, there was no written confirmation of the fee-sharing arrangement. Further, the attorney-client agreements did not provide that each firm had assumed joint financial responsibility for the matters. The referral agreement is the basis for all of the claims of the amended complaint that were dismissed–unjust enrichment, promissory estoppel, fraud, tortious interference, breach of fiduciary duty, and accounting–and the basis of the attorney liens that were found to be unenforceable. Fohrman's opening brief presents arguments only as to upholding the referral agreements in seeking reversal of the circuit court's orders.

¶ 37   Specifically, Fohrman argues that because the parties were engaged in a joint venture, substantial compliance with Rule 1.5(e) is sufficient to support its causes of action and notices of liens. In taking this position, Fohrman relies on *Phillips v. Joyce*, 169 Ill. App. 3d 520 (1988), and *Davies*. In *Phillips*, the plaintiff attorney agreed to stay a state suit brought on behalf of a group of injured persons so that a federal class action suit based on the same facts could proceed. *Id.* at 523. The plaintiff alleged that he and the defendant, the lead attorney for the federal class, agreed to a joint venture where they would equally share both the work and any fees in pursuit of the federal action. By letter signed by the defendant, all class clients were informed of the joint representation and the need to sign new contingent fee agreements. *Id.* The plaintiff obtained the signatures of his clients, the state court litigants, on new attorney-client agreements. The defendant, however, prepared and sent to all members of the federal class a new fee agreement that referred only to the defendant as the attorney. *Id.* at 523-24. The defendant pursued the federal litigation without dividing the work equally with the plaintiff. *Id.* at 523. At the end of the litigation, the federal court awarded attorney fees to the plaintiff and the defendant according to the time and expense each firm had expended and

not equally as anticipated in the parties' oral agreement. *Id.* at 524. The plaintiff sought to recover additional fees in a suit for a constructive trust and accounting based on the oral fee-sharing agreement. *Id.* The defendant argued the fee agreement violated Rule 2-107, the precursor of Rule 1.5, and the case was dismissed. *Id.* The appellate court reversed the dismissal, finding "a standard of substantial compliance [with Rule 2-107] is preferable because it comports with practical realities." *Id.* at 531. The appellate court found the plaintiff there had pled a sufficient breach of contract action and the oral fee-sharing agreement was not *per se* "violative of the Code." *Id.* at 532-33. In reversing and remanding the matter, the appellate court noted there may be other defenses to the recovery of the plaintiff's fees and the issue of whether the defendant could be estopped from using the disciplinary rules to avoid payment, was not on appeal and not resolved. *Id.* at 535.

¶ 38    In *Davies*, the plaintiff and the defendant agreed orally to jointly represent two clients in their respective personal injury suits and equally split any contingency fees. *Davies*, 291 Ill. App. 3d at 865. The clients signed contingent fee agreements with the defendant. *Id.* at 866-67. The agreements did not refer to the plaintiff, nor to any agreement as to the division of fees. *Id.* at 867. The plaintiff filed suit seeking one-half of the attorney fees that the defendant received as contingency fees in the referred matters alleging, in part, a breach of fiduciary duty. *Id.* The trial court granted the defendant's motion for summary judgment, finding public policy prohibited the plaintiff's recovery. *Id.* In reversing the summary judgment, the appellate court cited *Phillips*' conclusion that a standard of substantial compliance with Rule 2-107 is preferable because it comports with practical realities. *Id.* at 870. The record showed both clients were informed of the fee-sharing agreements and knew the fees would be split equally. *Id.* at 870-71. The appellate court found the "aims of [Rule 2-107 had] been fulfilled." *Id.* at 871. The appellate court also found the oral fee-sharing agreement was not *per se* violative of public policy when the claim is a breach of a fiduciary duty arising out of a joint venture and there has been "full or substantial compliance" with the ethical rules. *Id.* The defendant admitted, for purposes of the summary judgment, he had agreed to split the fees and to draft the attorney-client agreement to include the plaintiff. *Id.* at 872.

¶ 39    We make the following observations as to *Phillips* and *Davies*. First, of course, these cases interpreted Rule 2-107 and Rule 1.5(e) applies here. Second, this case is factually distinct from *Phillips* and *Davies* For example, in *Phillips*, the defendant admitted that he had agreed to the fee-sharing arrangement and to drafting a compliant agreement. Defendants here have not made such admissions. In *Davies*, the evidence showed the clients had been informed about the arrangement and division of fees. Again, there is no such evidence in the instant case. Finally, and most importantly, we observe these decisions turn on a concept of "practical realities." It is our understanding that the fee-sharing provisions of the Rules are not guide posts, but mandatory. See, *e.g.*, *Storment*, 203 Ill. 2d at 398. The "practical realities" concept is contrary to this principle and the public policy of protecting the clients which is behind the Rules.

¶ 40    Defendants argue the substantial compliance standard of *Phillips* and *Davies* as to Rule 2-107 no longer applies and there must be strict compliance with Rule 1.5(e) to sustain any claim for referral fees. Defendants cite *In re Spak*, 188 Ill. 2d 53 (1999) (finding requirements of then-Rule 1.5(c) as to contingency fee agreements contains no exception and rejecting argument the rule was not violated where client knew of fee arrangement from the outset and confirmed the terms in writing before the fees were received), and *Storment* (violation of the mandatory requirement of then-Rule 1.5(f) of a writing as to fee sharing was not "technical"

- 10 -

where both attorneys were to be compensated). Fohrman does not dispute these cases require strict compliance with the relevant ethical rules, but contends the holdings have limited relevancy because the Rules were analyzed in the context of attorney disciplinary proceedings. We disagree.

¶ 41 Fohrman's argument ignores that the Rules have the force of law. *Romanek*, 324 Ill. App. 3d at 399. Furthermore, this court has looked to both the language of the Rules and holdings in disciplinary cases when construing and determining the enforceability of fee arrangements. See, *e.g.*, *Guerrant v. Roth*, 334 Ill. App. 3d 259, 272 (2002) (where the court stated that then-Rule 1.5(c) set forth mandatory requirements for contingency agreements and, thus, "under Illinois law, there can be no resort to the 'implied promise' " to pay costs not set forth in the contingency agreement). Finally, as defendants argue, *Thompson v. Hiter*, 356 Ill. App. 3d 574, 590 (2005) (where the court looked to *Spak*), and *Episcope*, 373 Ill. App. 3d at 392 (where the court looked to *Storment*), which are not disciplinary cases, hold that strict compliance with the applicable provisions of the Rules is required for any claim seeking fees under a fee-sharing agreement to be successful.

¶ 42 In *Thompson*, the fee dispute was between a law firm and its former employee, a lawyer. The former employee's oral employment contract with the firm provided the firm would receive two-thirds of any fees generated on cases that the former employee brought to the firm during his employment. *Thompson*, 356 Ill. App. 3d at 576. Christine Thompson signed a contingency fee agreement with the firm and the former employee as to her wrongful death action. *Id*. The contingency fee agreement with the client did not disclose the oral fee-sharing arrangement between the firm and its former employee and, thus, did not comply with the then-applicable provisions of Rule 1.5(f). *Id*. at 590. After the former employee left the firm, Thompson discharged the firm only. *Id*. at 576. Upon resolution of the wrongful death action, the former employee filed a petition to adjudicate the firm's attorney lien. *Id*. at 577. The trial court found there was no joint venture and the firm, which had been discharged, was entitled only to a *quantum meruit* fee recovery. *Id*. at 580. The appellate court found that the firm and the former employee had been involved in a joint venture as to the representation of Thompson, but this did not mean the firm was entitled to fees pursuant to the oral employment agreement after it was discharged by Thompson. *Id*. at 589. The appellate court, citing *Spak*, held that strict compliance with then-Rule 1.5(f) was required, stating: "The Rules of Professional Conduct apply to all claims for fee sharing, regardless of whether the claim is asserted against the client or another attorney." *Id*. at 590 (citing *Hofreiter v. Leigh*, 124 Ill. App. 3d 1052, 1055 (1984)). The oral agreement was found to be unenforceable because the firm and the former employee had failed to comply with Rule 1.5(f) by not disclosing its terms and obtaining Thompson's consent thereto. *Id*. at 589-90.

¶ 43 At issue in *Episcope* was a joint representation agreement signed by both attorneys, the plaintiff and the defendant, and the client. *Episcope*, 373 Ill. App. 3d at 385. The client representation agreement listed the plaintiff and the defendant, and provided for a 33⅓% contingency fee, but did not state how these fees would be split or set forth the division of the lawyers' responsibilities. *Id*. at 386. The lawyers had an oral agreement which provided that the plaintiff would receive one-third of the contingency fee. *Id*. at 387. The plaintiff later sought to recover fees from the defendant in an action claiming a joint undertaking and claiming the defendant had breached a fiduciary duty. *Id*. The trial court granted summary judgment in favor of the defendant finding that the representation agreement failed to comply

with Rule 1.5(f) then in effect. *Id*. at 388-89. Citing *Thompson*, the appellate court affirmed the grant of summary judgment because the applicable ethical rule was violated and rejected the plaintiff's argument that strict compliance with the rule was unnecessary in a breach of fiduciary duty action. *Id*. at 392-94. In affirming summary judgment, the appellate court recognized both that "[a]ttorneys should act reasonably toward each other," and that the plaintiff had advanced equitable arguments for the payment of fees, but concluded that there was no legal basis for requiring the defendant to pay the plaintiff a share of the resulting fees. *Id*. at 396.

¶ 44     Our readings of *Storment*, *Spak*, *Thompson*, and *Episcope* lead to conclusions that Rule 1.5(e) requires strict compliance and, in the absence of strict compliance with Rule 1.5(e), Fohrman may not recover for referral fees. See generally *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294 (7th Cir. 1995) (under Illinois ethical law, fee-sharing agreements will be enforced only where written requirements of ethical rules are met); *Kaplan v. Pavalon & Gifford*, 12 F.3d 87, 92 (7th Cir. 1993) ("In Illinois, a fee-sharing agreement between attorneys for referrals, which is neither in writing nor signed by the client, is unenforceable as a matter of public policy.").

¶ 45     We disagree with Fohrman that our strict compliance with the ethical rules standard is contrary to *Daniel v. Aon Corp.*, 2011 IL App (1st) 101508. The plaintiff in that case sought additional fees in relation to a class action based on a fee-sharing agreement. *Id*. ¶ 1. The appellate court affirmed summary judgment in favor of the defendants because the fee-sharing agreement did not comply with Rule 1.5(e). *Id*. ¶ 22. In affirming, the appellate court rejected the plaintiff's argument, pursuant to *Phillips*, that where there is a joint venture and the fee-sharing agreement is silent as to the percentage of division of fees, it is presumed the fees are allocated equally. *Id*. ¶ 25. The appellate court further held the fee-sharing agreement failed to comply with Rule 1.5(e) and it would "not condone the violation and use the agreement as a basis of recovery [of fees] for [the] plaintiff." *Id*. *Daniel* is consistent with our conclusions that strict compliance with Rule 1.5(e) is required and the circuit court's rulings were proper.

¶ 46     We also disagree with Fohrman that *Holstein* advocates for the use of a substantial compliance standard here. The *Holstein* plaintiff alleged an oral referral fee agreement with the defendants for an equal share of any fees derived from referred personal injury cases. *Holstein*, 246 Ill. App. 3d at 722. During the formation of the oral fee agreement, the parties reviewed Rule 2-107 and agreed that the defendants would disclose in writing the fee arrangement to the referred clients in compliance with Rule 2-107. *Id*. The plaintiff drafted a "model" attorney client-agreement which the defendants were "bound" to use. *Id*. The defendants instead used their standard contingency fee agreement which did not disclose the fee-sharing agreement. *Id*. at 723. The plaintiff referred 10 clients to the defendants, but referral fees were not paid on 5 of those matters, including a suit filed on behalf of Danny Flynn. *Id*. at 723-24. The plaintiff sought the unpaid referral fees by filing suit against the defendants which alleged a breach of contract count and a breach of a fiduciary duty arising out of a joint venture count. *Id*.

¶ 47     The defendants moved for summary judgment on both counts arguing the alleged fee referral agreement violated Rule 2-107. *Id*. at 723. The defendants argued the plaintiff himself violated Rule 2-107 because the plaintiff did not have an attorney-client relationship with the referred clients and never disclosed the fee-sharing agreement prior to the referrals. *Id*. In the alternative, the defendants argued, if the plaintiff had an attorney-client relationship with the referred clients, the plaintiff had a nondelegable duty to disclose the agreement to his clients.

*Id*. at 723-24. The plaintiff moved for summary judgment on the joint venture/breach of fiduciary duty count arguing the defendants acted contrary to their fee sharing agreement and violated Rule 2-107 by using the noncomplying contingency fee agreements. *Id*. at 724. In his deposition, the plaintiff did not recall speaking with Flynn, but recalled informing Flynn's family of the fee arrangement. *Id*. However, the defendants submitted Flynn's affidavit, which stated the plaintiff had not informed him of the fee-sharing agreement. *Id*. at 744. The plaintiff had only a general recollection of speaking to the other four referred clients at issue and informing them of the agreement. *Id*. at 724. The circuit court granted the defendants' motion for summary judgment on both counts and denied the plaintiff's motion for summary judgment on the fiduciary duty count after finding the fee-sharing agreement violated Rule 2-107 and public policy. *Id*. at 725.

¶ 48    On appeal, the appellate court first affirmed the granting of summary judgment in favor of the defendants on the breach of contract count because the referred clients did not consent in writing to the referral fee agreement as required by Rule 2-107. *Id*. at 734-35. In so deciding, the appellate court declined to follow *Phillips* finding *Phillips* factually distinguishable because the clients in *Phillips* had agreed in writing to the joint representation. *Id*. at 736. The appellate court rejected the plaintiff's argument that the defendants should be estopped from asserting the unenforceability of the agreement under Rule 2-107 because the defendants' conduct resulted in the noncompliance with the rule. *Id*. at 736-37. The appellate court said it would not enforce a fee agreement which contravenes public policy, stating: "Our paramount concern must be the effect these fee-sharing agreements have on the clients, not the attorneys involved. 'It does not matter whose ox is gored.' " *Id*. at 737 (quoting *Schniederjon v. Krupa*, 162 Ill. App. 3d 192, 195 (1987)).

¶ 49    We similarly have found the referral agreement at hand to be unenforceable because the attorney-client agreements did not strictly comply with Rule 1.5(e). Because the enforcement of the referral agreement would be contrary to the public policy embodied in Rule 1.5(e) we, as did the *Holstein* court, reject an argument that the referral agreement should be enforced because of defendants' alleged "nefarious" conduct. See also *Episcope*, 373 Ill. App. 3d at 396. In doing so, we do not condone any alleged misconduct or encourage unfairness in relationships between attorneys. We uphold the Rules' interest in protecting clients above the interests of attorneys in recovering fees.

¶ 50    The appellate court in *Holstein*, however, reversed the summary judgment entered against the plaintiff on the joint venture count. *Holstein*, 246 Ill. App. 3d at 741. The appellate court first found an issue of material fact existed as to the existence of a joint venture. *Id*. at 739. The appellate court also found if a joint venture existed, the fee-sharing agreement, which gave rise to the joint venture as alleged, was not unenforceable on public policy grounds. *Id*. at 740. The plaintiff had alleged the fee-sharing agreement was made after reviewing Rule 2-107 and after the defendants agreed to full compliance with the rule and to use the model retainer contract. *Id*. at 722-23. The joint venture, as alleged in the amended complaint, envisioned compliance with the applicable ethical rules, therefore, a breach of fiduciary duty claim could lie. *Id*. at 742.

¶ 51    In a supplemental opinion on denial of rehearing, the appellate court made clear that its decision as to the joint venture count was based on the plain language of Rule 2-107 which did not require a referring attorney to have an attorney-client relationship with the referred client

prior to the referral and does not require the referring attorney to obtain the necessary written disclosures prior to the referral. *Id*. at 741.

¶ 52 However, in its supplemental opinion, the appellate court found the plaintiff could not recover referral fees under any theory, including a joint venture, if the plaintiff had breached his own fiduciary duty to fully disclose to a client the existence of a fee-sharing agreement. *Id*. at 743. The *Holstein* court said this duty arises both from the ethical rules, and common law. *Id*. (citing *Schneiderjon*, 162 Ill. App. 3d at 195). The plaintiff had alleged he had an attorney-client relationship with the referred clients. *Id*. at 742. The appellate court, thus, concluded:

> "We agree with defendants' assertion that *Schniederjon* acts to bar plaintiff's recovery where plaintiff has failed to make full disclosure of his fee-referral agreement to his own clients. We will not aid an attorney in recovering a referral fee where that attorney has himself breached his fiduciary duty to the referred client. This is so whether the referring attorney seeks recovery of a portion of the fee itself or whether the fee sought is labelled a 'profit' of a claimed 'joint venture.' " *Id*. at 743.

The appellate court found a material issue of fact existed only as to whether Flynn had been informed of the fee-sharing agreement. *Id*. at 744-45. As to the other clients, the plaintiff failed as a matter of law to show he notified them of the fee agreement and, therefore, based on his own breach of fiduciary duty, could not recover fees. *Id*. at 745.

¶ 53 In finding a question of fact existed as to the sustainability of the joint venture claim as to Flynn only, the appellate court said the joint venture envisioned full compliance with Rule 2-107 and an action was alleged because the plain language of Rule 2-107 did not require a client to be informed of the fee agreement before a referral was made. *Id*. at 741. It appears the appellate court relied on the language of Rule 2-107 which stated the "receiving" lawyer must fully disclose to the client that the referring attorney "*has received or will receive* economic benefit from the referral." (Emphasis added.) *Id*. (citing Ill. S. Ct. Code of Prof. Res. R. 2-107(a)(2) (eff. July 1, 1980)). That language is not present in Rule 1.5(e). Rule 1.5(e) does not place the responsibility of disclosure solely on the receiving attorney, and provides the disclosure must be made that the referring attorney *will* receive the fee.

¶ 54 It is arguable that the holding in *Holstein*, as to joint venture claims, no longer has vitality in that it was grounded on the plain language of Rule 2-107 not present in Rule 1.5(e). Moreover, we believe the *Holstein* ruling creating the limited "exception" for certain joint venture claims is inconsistent with its decision on the breach-of-contract count and its refusal to enforce an agreement which violates public policy. The holding on the joint-venture count also seems inconsistent with the later holdings in *Spak, Storment, Episcope*, and *Thompson*, as discussed above.

¶ 55 Even if this limited "exception" to the standard of strict compliance with the Rules continued to have a foundation, we would not apply the *Holstein* "exception" here. The amended complaint shows the existence of an attorney-client relationship between Fohrman and the referred clients (as does the affidavit of Donald W. Fohrman) and, therefore, Fohrman would have had a duty to ensure its clients were fully informed of the referral agreement. Fohrman does not allege fulfillment of its fiduciary duty in this regard. Further, Fohrman had notice of the noncompliant attorney-client agreements and allowed them to be used in contravention of Rule 1.5(e) and its common law fiduciary duty. Finally, we would not find there was substantial compliance with Rule 1.5(e) in this case where the attorney-client

- 14 -

agreements did not inform the clients of the fee-sharing arrangement based on referrals, the exact split in fees, and that Fohrman and defendants had assumed equal financial responsibility. In so concluding, we reject Fohrman's argument that an equal split of responsibilities and fees must be presumed because the attorney-client agreements listed both attorneys. See *Daniel*, 2011 IL App (1st) 101508, ¶ 25. We certainly do not conclude that the clients would have just "presumed" such an arrangement when signing the attorney-client agreements as that would be contrary to the policy (protection of clients' interests) and strict requirements of Rule 1.5 that the client must be informed of the fee arrangements, fee split, and equal sharing of responsibility.

¶ 56   Because there was not complete compliance with Rule 1.5(e), and Fohrman failed to meet its own fiduciary duty of disclosing the referral agreement, we find the circuit court properly dismissed the amended complaint with prejudice and granted summary judgment in favor of Alberts as to the unenforceability of the attorney liens. Based on our decision, we need not address the other arguments raised by the parties.

¶ 57   Affirmed.